# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BRAD BOYD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 2:08-CV-108-TLS |
| | ) |
| CSX TRANSPORTATION, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The Plaintiff brought the present case against the Defendant under the Federal Employers' Liability Act (FELA), 45 U.S.C. §51, et. seq. The Plaintiff alleges that he suffered back injuries due to excessive whole-body vibrations, which the nature of his job subjected him to between 2005–2007. The Defendant denies these allegations and on May 21, 2010, filed a Motion for Summary Judgment [ECF No. 25] and accompanying Memorandum in Support [ECF No. 26], and Motion to Exclude the Causation Opinions of Plaintiff's Expert [ECF No. 27], and accompanying Memorandum in Support [ECF No. 28]. On July 16, the Plaintiff filed Responses [ECF Nos. 35 and 36] to the Defendant's Motions. On July 23 and August 4, the Defendant filed Replies [ECF Nos. 37 and 39]. While these Motions were pending, the United States Court of Appeals for the Seventh Circuit issued an opinion in *Myers v. Illinois Central Railroad Co.*, 629 F.3d 639 (7th Cir. 2010), which directly addresses the issue of causation in this case. In a January 5, 2011, Order [ECF No. 43] the Court requested additional briefing from the parties to address how the *Myers* decision affects the pending Motion to Exclude. On January 26, 2011, the Defendant submitted its Supplemental Memorandum [ECF No. 44], and on February 9, 2011, the Plaintiff submitted his Supplemental Brief [ECF No. 45]. The Motion for Summary Judgment and Motion to Exclude are fully briefed and ripe for ruling.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure state that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] The motion should be granted so long as no rational fact finder could return a verdict in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249–50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* N.D. Ind. L.R. 56.1(a) (stating that the movant must provide a "Statement of Material Facts" that identifies the facts that the moving party contends are not genuinely disputed). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed in Rule 56 to designate specific material facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). According to Rule 56:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

---

[1] A new version of Federal Rule of Civil Procedure 56 went into effect on December 1, 2010. The purpose of the revisions to the Rule was to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. Fed. R. Civ. P. 56, Committee Notes for 2010 Amendments. The amendments are not intended to effect continuing development of the decisional law construing and applying the standard for granting summary judgment, which remains unchanged. *See* Fed. R. Civ. P. 56(a) & Committee Notes for 2010 Amendments.

   interrogatory answers, or other materials; or
   (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

  Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999). *See also Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

## MOTION TO EXCLUDE ANALYSIS

  Federal Rule of Evidence 702 governs the admissibility of expert witnesses. Rule 702 requires that an expert opinion "(1) . . . is based upon sufficient facts or data, (2) . . . is the product of reliable principles and methods, and (3) [applies] the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, stated that Rule 702 requires the district court to perform a "gate-keeping function" before admitting expert scientific testimony, to ensure that it is not only relevant, but reliable. 509 U.S. 579, 589 (1993). The purpose of the rule in *Daubert* "was to make sure that

when scientists testify in court they adhere to the same standards of intellectual rigor that are demanded in their professional work." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996). "Before considering whether the testimony 'will assist the trier of fact to understand or determine a fact in issue,' a district court must make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 824 (7th Cir. 2010) (quoting *Daubert*, 509 U.S. at 592–93). To complete the preliminary scientific knowledge assessment a court must "consider whether the testimony has been subjected to the scientific method; it must rule out 'subjective belief or unsupported speculation.'" *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1106 (7th Cir. 1994) (quoting *Daubert*, 509 U.S. at 590). After making a scientific assessment the Court must determine whether the proffered testimony is relevant. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Expert testimony about causation is a central issue in this case, and the Court's resolution of the Motion to Exclude is essential to resolving the Defendant's Motion for Summary Judgment. *Myers*, 629 F.3d at 643 ("For most cumulative trauma injuries, courts follow the general principle that a layman could not discern the specific cause and thus they have required expert testimony about causation.") (citing cases). The Defendant argues that the Plaintiff's expert, Dr. Dennis Gates, may not provide an expert opinion on the issue of causation in this case because he only offers a subjective opinion and not one arrived at using methodology appropriate under Rule 702. The Plaintiff responds that Dr. Gates's methodology, along with his education, training, experience, and special knowledge in medicine and orthopedics, make his opinion appropriate under Rule 702. The Plaintiff argues the Defendant's challenge to Dr. Gates's opinion is more appropriately directed at the weight of his opinion, which could be addressed at

4

trial.

In forming his expert opinion, it is appropriate for Dr. Gates to rely on his experience as well as reviewing the record in this case, containing the Plaintiff's deposition, the Plaintiff's medical history, and knowledge about what may have caused the Plaintiff's injury— "three years of riding on a rough railroad track." (Pl.'s Resp. in Opp'n to Def.'s Mot. to Exclude Ex. B 2, ECF No. 36-2.) A plaintiff's expert does not need to rely on the scientific methods that a defendant proffers in order to comply with Rule 702. *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000) ("Anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness.") (citing Fed. R. Evid. 702). The Defendant argues that "Dr. Gates has not articulated a methodology or technique by which his opinion could be scientifically tested or subject to peer review." (Def.'s Reply Mem. in Supp. of its Mot. to Exclude the Causation Ops. of Pl.'s Expert 12, ECF No. 37.) The Seventh Circuit has advised that:

> a district court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." The Supreme Court has identified the following factors as pertinent to this inquiry: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether it has been generally accepted within the relevant scientific community.

*Happel*, 602 F.3d 824 (citations omitted) (quoting *Daubert*, 509 U.S. at 592–93). Dr. Gates reviewed multiple studies that meet these factors, as evidenced by the several studies, publications, and journal articles attached to his report. (Pla.'s Resp. in Opp'n to Def.'s Mot. to Exclude Ex. C, ECF No. 36-3.) These factors ensure that an expert is not relying on "junk science" in rendering his opinion in a given case. *Tuf Racing Prods., Inc.*, 223 F.3d at 591. In addition to these factors a court must consider "the proposed expert's full range of experience and

5

training in the subject area, as well as the methodology used to arrive at a particular conclusion." *Grayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010). The Defendant highlights that Dr. Gates testified:

> Q. Now, has your--in forming your opinions in this case, did you use any particular methodology for determining a relationship between vibration from locomotives in Mr. Boyd's back or neck conditions?
> A. No, just experience and experience.

(Gates Dep. 53:3–8, Feb. 24, 2010, ECF No. 32-1.) Dr. Gates does not appear to rely solely upon his experience. A review of the complete record presented to the Court reveals that Dr. Gates relied on a number of studies and literature, a full review of the Plaintiff's medical history, a review of the Plaintiff's working conditions, and finally his experience. This is distinguishable from, for example, relying solely on experience and the temporal proximity of the Plaintiff's work as a road engineer and his development of the injuries at issue in this case. *Happel*, 602 F.3d at 825–26 (finding that the district court did not abuse its discretion when it excluded expert testimony that relied solely on the expert's past experience and temporal proximity of the defendant's conduct and the plaintiff's injury).

The Court now turns to the *Myers* case, which the parties rely most heavily on to present their arguments on the admissibility of Dr. Gates's testimony, and on which the Court requested they provide additional briefing. Dr. Gates offers an opinion based on the Plaintiff's full medical history, which supports a conclusion that his reasoning is scientifically reliable enough to meet the Rule 702 threshold on summary judgment. One of the largest reliability problems that the plaintiff's proffered experts faced in *Myers* was the failure to look at the plaintiff's full medical history and instead only consider the injury they were treating. *Myers*, 629 F.3d at 645. Dr. Gates begins his report by noting "[t]he medical records regarding Mr. Boyd's medical care have been

6

reviewed along with the chronological summary that had been prepared." (Pl.'s Resp. in Opp'n to Def.'s Mot. to Exclude Ex. B 1, ECF No. 36-2.) Dr. Gates provides some indication that he utilized differential etiology in order to determine the cause of the Plaintiff's injury in this case, which is distinguishable from the differential diagnosis the experts in *Myers* probably used in order to treat the plaintiff in that case. His report notes that "[t]here are no other apparent causes for this condition in a relatively young man." (*Id.* at Ex. B 2.) The Defendant argues that Dr. Gates's failure to rule out any other causes means there was nothing differential about his etiological conclusion. The Defendant's assertion is based on singling out deposition testimony where Dr. Gates claimed there are "no other apparent causes for this condition." (ECF No. 44 at 4.) However, Dr. Gates's review of the Plaintiff's full medical history and the Plaintiff's deposition testimony allowed him to rule out potential causes of the Plaintiff's injury. For example, Dr. Gates was able to rule out certain causes by determining that the Plaintiff's condition had improved with respect to a back injury he suffered in 2000. (Pl.'s Resp. in Opp'n to Def.'s Mot. to Exclude Ex. B 1, ECF No. 36-2.)

The Defendant also challenges Dr. Gates's methods for determining that whole body vibrations caused the Plaintiff's condition, because Dr. Gates did not rely on standards for whole body vibrations provided by the International Organization for Standardization (ISO). The Defendant correctly highlights that Dr. Gates does not even appear to understand the ISO standards. (ECF No. 37 at 7 ("[a]ccording to Dr. Gates, 'They got all these fancy numbers, so I'm aware of them, but I can't really comment on the quality of them or something like that.'") (citing Gates Dep. 58, ECF No. 32-1).) While the ISO standards may be one scientific data point on which an expert could base a reliable opinion under Rule 702, using standards is not the only way to offer a reliable opinion. In fact, the issue in this case is whether the Plaintiff's riding over

7

rough track near Rushville, Indiana, caused his injury. The issue in *Myers* pertained to life long exposure to whole body vibrations and the ISO standards may have been more relevant in that case. In this case, ISO standards generally do not appear relevant to whether exposure to certain sections of rough track can cause the type of injury the Plaintiff sustained. Furthermore, while focusing on the specific injury alleged, the Defendant's presentation of Elaine Serina, a biomechanical ergonomics expert, is not helpful to the Court because her testimony only concerns whole body vibrations generally and not the specific injury and causation allegations in this case. *See Myers*, 629 F.3d at 644 ("The question we must ask is not whether an expert witness is qualified in general, but whether [her] qualifications provide a foundation for [her] to answer a specific question.") (quoting *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010)). Therefore, when considering all the materials and sources that Dr. Gates reviewed and that his findings relate specifically to the alleged rough track and injury in this case, the Court finds that—for purposes of summary judgment—Dr. Gates's opinion is reliable under Rule 702 and is "more than a casual diagnosis that a doctor may offer a friend or acquaintance outside the office about what could be causing his aches and pains." *Id*. The Court will deny the Defendant's Motion to Exclude the Causation Opinions of Plaintiff's Expert.

## STATEMENT OF MATERIAL FACTS

**A.     Plaintiff's Employment with the Defendant**

The Defendant hired the Plaintiff in March 1999 as a yard brakeman. The Plaintiff became a conductor near the end of 1999. The duties for these positions included throwing switches around the rail yards to facilitate the loading and unloading of trains. This position did not require riding on the trains. The Plaintiff remained in his position as a conductor until 2002

when he became a locomotive engineer. His six month training, which involved shadowing another engineer, required him to ride on an engine between Avon, Indiana, and St. Louis, Missouri. After his training, the Plaintiff continued to work in the rail yards until 2005. In late 2005, the Plaintiff became a road engineer and rode the trains from Avon, Indiana, to Cincinnati, Ohio. During the Avon to Cincinnati ride the trains would ride over portions of rough track; the worst area was between Rushville, Indiana, and the grain elevator location known as Mauzy. The Plaintiff stopped working for the Defendant in April 2007 in order to attend to medical conditions with his neck and back. He did not return to work for the Defendant, but has been working for another company as a welder since February 2009.

**B.     The Plaintiff's Medical Issues**

The first medical treatment the Plaintiff sought relating to this case was in 2000, when he visited his family doctor, Dr. Willem Rivenburg, complaining of back pain. Dr. Rivenburg diagnosed the Plaintiff's condition as degenerative joint disease of the lumbar spine and advised him that he should take a short period off of work and undergo physical therapy. The Plaintiff had lower back problems in the past, which may have included a lower back fracture. The Defendant was unaware of the Plaintiff's previous lower back problems, in part because he failed to reveal them in his 1999 employment application. The treatment that Dr. Rivenburg prescribed worked well enough for the Plaintiff to quickly return to his work. The next medical treatment the Plaintiff sought was for neck pain in 2006, the diagnosis and treatment period lasted beyond 2006. Dr. Theresa Trierweiler, the first doctor to examine the Plaintiff, referred him to Dr. Ganesh Ghooray, a neurologist, to determine whether the Plaintiff suffered from a pinched nerve. Dr. Ghooray then referred the Plaintiff to Dr. James Cole, a surgeon. Dr. Cole diagnosed the

9

Plaintiff with herniated discs in his cervical spine at the C5-6 and C6-7 levels. When the Plaintiff did not improve after physical therapy, Dr. Cole recommended surgery. Dr. Cole performed two surgeries, the first in 2007 involving fusion of the Plaintiff's cervical spine, and the second in 2008 involving a fusion of his lumbar spine. The Plaintiff was able to take classes in late 2008 and obtained his current job in early 2009.

C.  **The Plaintiff's Experts**

The Plaintiff presents two experts, Mr. Alan Blackwell and Mr. Paul Byrnes, who testify that the stretches of track at issue in this case failed to comply with federal standards. The Plaintiff's expert Dr. Gates, discussed above, concluded that the Plaintiff's degenerative disc disease was aggravated by the vibrations he was subject to during his trips between Avon and Cincinnati. The Plaintiff seeks damages to compensate him for the injuries he alleges he sustained as a result of exposure to excessive whole-body vibration.

**MOTION FOR SUMMARY JUDGMENT ANALYSIS**

The Plaintiff alleges two types of violations by the Defendant caused his injury—that it violated the Locomotive Inspection Act, 49 U.S.C. §§ 20701–20703 (LIA), and that it violated Federal Track Safety Standards, 49 C.F.R. § 213, *et seq.* The Plaintiff's main basis for his allegation that the Defendant violated the LIA, is that certain locomotives, namely GP locomotives, run rougher than other locomotives because they only have four axles instead of six. To support this aspect of his claim the Plaintiff presents the testimony of Mr. Byrnes, a locomotive expert. The Plaintiff's claim that the Defendant violated Federal Track Safety Standards is supported by the testimony of Mr. Blackwell. Finally, the Plaintiff presents Dr.

10

Gates's testimony, described above, to establish causation. The Defendant responds that the Plaintiff's proffered evidence pertaining to alleged LIA violations is insufficient to proceed past summary judgment because evidence of simply a rougher ride is not enough to establish liability under FELA. In response to the alleged Federal Track Safety Standards violations, the Defendant notes that Mr. Blackwell's opinion is based on an inspection of the areas of track in question well after the Plaintiff finished his employment with the Defendant. The Defendant argues that the Plaintiff cannot establish causation without an expert, and for the reasons discussed above, Dr. Gates's causation opinion should be excluded, leaving the Plaintiff without any proof of causation as a matter of law.

> FELA provides:
>
> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such [interstate] commerce, for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. FELA "imposes on railroads a general duty to provide a safe workplace." *Holbrook v. Norfolk So. Ry. Co.*, 414 F.3d 749, 741 (7th Cir. 2005) (quoting *McGinn v. Burlington N. R.R. Co.*, 102 F.3d 295, 300 (7th Cir. 1996)). Plaintiffs bringing suit under FELA have a lighter burden of proof and "can more easily survive a motion for summary judgment." *Id.* at 742 (citing *Lisek v. Norfolk & W. Ry. Co.*, 30 F.3d 823, 832 (7th Cir. 1994)). Unlike an ordinary negligence case, a "railroad will be held liable where 'employer negligence played any part, even the slightest, in producing the injury.'" *Id.* (quoting *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957)). Even though plaintiffs under FELA face a lighter burden on summary judgment, "FELA does not . . . render a railroad an insurer of its employees . . . [t]hus, a plaintiff

must proffer some evidence of the defendant's negligence in order to survive summary judgment." *Id.* (citations omitted).

A. **Locomotive Inspection Act Violations**

The Defendant argues that the Plaintiff does not identify any parts and appurtenances of any of the railroad cars he rode that were not in proper condition or were unsafe, in terms of compliance with federal regulations. The Plaintiff responds that a railroad may still be liable for unsafe equipment even if the railroad's maintenance of that equipment complies with federal regulations. The LIA makes it "unlawful for any carrier to use or permit to be used on its line any locomotive unless the entire locomotive and its appurtenances are in proper condition and safe to operate in the service to which they are put, without unnecessary peril to life or limb." 49 U.S.C. § 20702; 49 C.F.R. § 229.7(a)(1). A railroad's violation of the LIA constitutes negligence per se under FELA. *Coffey v. Ne. Ill. Reg'l Commuter R. Corp.*, 479 F.3d 472, 477 (7th Cir. 2007). A railroad violates the LIA either by violating a regulation promulgated under the statute or by breaching its duty to keep all the locomotives parts and appurtenances in a proper condition and safe to operate without unnecessary peril to life or limb. *Id.*; *McGinn v. Burlington N. R.R. Co.*, 102 F.3d 295, 299 (7th Cir. 1996); *Beacraft v. Norfolk S. Ry. Co.*, No. 1:08-CV-80, 2009 WL 1605293, at *2 (N.D. Ind. June 5, 2009).

The Plaintiff has provided at least some evidence that would allow a reasonable jury to conclude that the Defendant violated the LIA. While discussing the potential causes for the locomotive's lateral motion—"rocking"—Mr. Byrnes testified during his deposition:

> Q. You discussed briefly the lateral motion; in other words, the rocking side to side of locomotive, and mentioned that I believe one rail being lower than the other would be a cause of this.

> A. Yes.
> Q. Would another cause of this be what is sometimes referred to as low joints, a jointed rail section where--at a point where the two rails meet--two sections of rail meet on one side that is lower, that this is a stress point of the load dynamics?
> A. It could be, although normally where you have a rail mismatch, I believe it would be more of an up and down. In any event, that would be a condition which doesn't develop overnight and it's events by what's known as rail batter, which should be whether a track inspector, for example, is going over the track in a high-rail vehicle or is doing a walking inspection. In either case, it should be visible.
> Q. What are some of the other causes of lateral or side sway on a locomotive?
> A. There is rocking, which we discussed, and then there is what we used to call a lateral run-out, which can be caused by track gage being out of compliance, problems with a track switch, a mainline switch, or it may be a problem with the location, for example, side-bearing clearances, excessive side-bearing clearances.
> Q. So that can be a combination of roadbed factors as well as locomotive maintenance factors?
> A. Yes.

(Byrnes Dep. 70:15–71:24, Sept. 19, 2009, ECF No. 31.) This testimony provides evidence that maintenance factors could contribute to the locomotive rocking. This expert opinion is consistent with the Plaintiff's recollection, which he testified about at his deposition:

> Q. Was a GP40 an engine you used from Avon to Cincinnati, or was that generally a yard engine?
> A. We used them in the yard, but there were times we took them between here and Cincinnati.
> Q. All right. And what is it about the GPs or GP40s that sticks out?
> A. They're very rough.
> Q. Okay. When you say very rough, what do you mean?
> A. A lot of bouncing, shaking back and forth, vibrating. The seats are real stiff.

(Boyd Dep. 53:12–21, Apr. 21, 2009, ECF No. 29-1.) The combination of the Plaintiff's recollection of bouncing, shaking back and forth, and vibrating, along with Mr. Byrnes's testimony that this could be due to maintenance factors creates a material factual dispute whether the Defendant breached its duty of care under the LIA.

The Defendant correctly highlights that the Plaintiff has failed to provide any evidence that the four axle locomotive design of the GP40 engine violates any federal regulations. The

Plaintiff's expert Mr. Byrnes testified at his deposition:

> Q. . . . In other words, the four-axle locomotives might ride a little rougher, might be a little lighter, might move around more, but they still meet all the requirements as designed of whatever federal regulations apply to locomotive design?
> A. Yes.

(Byrnes Dep. 56:11–17, Sept. 19, 2009, ECF No. 31.) Even though the Plaintiff has not shown the four axle locomotive design to violate any federal regulations, he has established a factual dispute whether maintenance problems led to the rocking that the Plaintiff described.[2] Because the Defendant can violate the LIA in a regulatory sense or a traditional duty sense, the Plaintiff's failure to provide evidence on the regulatory basis does not preclude him from surviving summary judgment on the duty basis.

### B. Federal Track Safety Standards Violations

There is a genuine dispute of material fact whether the Defendant violated the Federal Track Safety Standards by failing to properly maintain its tracks. The Plaintiff provides Mr. Blackwell's expert opinion that the track conditions described by the Plaintiff, and later confirmed during Mr. Blackwell's own examination, constituted multiple violations of the Federal standards. The Defendant argues that the Plaintiff has not shown any evidence that the Defendant knew or had notice of any track defects in violation of the Federal standards. Also, the Defendant urges the Court to disregard Mr. Blackwell's findings as irrelevant because they are based on his inspection in 2009, more than two years after the Plaintiff last worked for the Defendant. Unlike violations of other Federal Railroad Administration (FRA) regulations that

---

[2] The same rationale applies to the Defendant's argument utilizing the ISO standards to establish that generally, the vibrations from a locomotive may not have any adverse health effects. General ISO standards and Ms. Serina's testimony do not negate that a factual issue exists whether maintenance deficiencies led to vibrations in this case, which caused the Plaintiff's injuries.

create strict liability when violated, track maintenance regulations require that a railroad have knowledge before it is liable for track maintenance failures. 49 C.F.R. § 213.5(a).[3]

The Plaintiff has provided evidence that during the time period the Plaintiff rode on the track between Avon and Cincinnati, there may have been track defects that the Defendant knew existed and did not remedy in compliance with Federal regulations. Mr. Blackwell testified at his deposition that the Defendant failed to appropriately perform track inspections in order to identify defects. (Blackwell Dep. 59:13–61:16, Sept. 15, 2009, ECF No. 30-1.) Specifically, Mr. Blackwell highlighted discrepancies between the track inspector's reports and the track geometry car records to establish that the Defendant did not properly conduct its track inspections. (*Id.*) He explained that a failure to perform track inspections correctly, even if performing inspections with the proper frequency, establishes that the Defendant should have known about track defects, even if it did not actually know about the defects. (*Id.*) Mr. Blackwell reported and testified at his deposition that the Defendant failed to take remedial action in some instances in which it knew or should have known about defects. (*Id.* at 63:22–54:18; Blackwell Rep. June 13, 2009, ECF No. 35-2.) The Defendant argues that Mr. Blackwell's inspection of the track section in question more than two years after the Plaintiff last rode on the track is irrelevant. The Defendant is correct that if Mr. Blackwell's 2009 inspection was the sole evidence the Plaintiff provided it would not be enough to defeat summary judgment. However, Mr. Blackwell's 2009 inspection,

---

[3] The basis for the knowledge requirement pertaining to track maintenance is helpful to distinguish it from other FRA regulations. 63 Fed. Reg. 33992 at 33995:
> The current track regulations are enforced against a track owner "who knows or has notice" that the track does not meet compliance standards. This knowledge standard is unique to the track regulations; other FRA regulations are based on strict liability. The knowledge standard is founded on the notion that railroads cannot prevent the occurrence of some defects in track structures that are continually changing in response to the loads imposed on them by traffic and effects of weather. Many defects may not be detected even when the track owner exercises reasonable care. Therefore, track owners should be held responsible only for those defects about which they know or should know.

merely assisted his report and deposition testimony, along with the Plaintiff's deposition, and the Defendant's records. Similarly, the Defendant argues that the track geometry car printouts that Mr. Blackwell relied on in part were not all from the time period during which the Plaintiff worked for the Defendant. Again, if the Plaintiff relied only on track geometry printouts from before the Plaintiff started riding on the track in question, then the Plaintiff would potentially fail to meet his burden on summary judgment. The Plaintiff has established a material issue of fact because Mr. Blackwell's opinion, along with the Plaintiff's testimony, provide enough evidence from which a reasonable jury could conclude the Defendant knew or should have known about, and failed to remedy, track defects that the Plaintiff rode on during his employment.

**C.** **Causation**

FELA is not a strict liability statute, *Holbrook*, 414 F.3d at 741, and requires that a plaintiff prove duty, breach, forseeability, and causation. *Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059, 1062 (7th Cir. 1998) (citing *Fulk v. Ill. Cent. R.R. Co.*, 22 F.3d 120, 124 (7th Cir. 1994)). "Debate continues over the issue of how plaintiffs must establish causation under FELA." *Myers*, 629 F.3d at 642 (citations omitted). When a layperson could understand an injury expert testimony is not required to establish causation, "[b]ut when there is no obvious origin to an injury and it has 'multiple potential etiologies, expert testimony is necessary to establish causation.'" *Id.* at 643 (quoting *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46–47 (2d Cir. 2004)). The Defendant correctly argues that "[w]ithout the causation opinions of Dr. Gates, Plaintiff [would have] no evidence of causation, an essential element of his FELA claim." (Def.'s Mem. in Supp. of its Mot. for Summ. J. 16, ECF No. 26.) In light of the Court's decision not to exclude Dr. Gates's opinion the Plaintiff has presented sufficient evidence of causation to

proceed to a jury.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Defendant's Motion to Exclude [ECF No. 27] and Motion for Summary Judgment [ECF No. 25]. The telephonic status conference set for March 14, 2011, at 10:30 AM is confirmed, at which time the Court will set this matter for trial.

SO ORDERED on March 7, 2011.

s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION